Filed 10/30/23  P. v. Mendiola CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEONCIO RAMON MENDIOLA,<br><br>    Defendant and Appellant. | H050488<br>(Santa Clara County<br> Super. Ct. No. CC933529) |

In exchange for a stipulated sentence of 19 years in prison, defendant Leoncio Ramon Mendiola pleaded no contest to attempted murder and admitted a firearm use allegation.  In his previous appeal, a panel of this court remanded the matter to allow him to request resentencing based on an ameliorative change in the law that took effect after he was sentenced.  On remand in 2022, the trial court denied his request.  He argues in this second appeal that reversal is again required based on a different change in the law that took effect before the 2022 resentencing.  For the reasons we explain here, we will affirm the judgment.

## I.    BACKGROUND

Our recitation of the facts is largely reproduced from our earlier opinion in case Nos. H047240 and H047983.  (*People v. Mendiola* (Jan. 4, 2022, H047240, H047983) [nonpub. opn.].)  (We have taken judicial notice of those cases at defendant's request.)  Defendant was charged by information with attempted murder (Pen. Code, §§ 187, 664) and shooting at an occupied vehicle (Pen. Code, § 246; unspecified statutory

references are to this code.)  As to both felonies, the information alleged defendant personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and personally inflicted great bodily injury (§ 12022.7, subd. (b)).  He was also charged with one misdemeanor count of exhibiting a firearm (§ 417, subd. (a)(2)).  According to the probation report, the charges stemmed from defendant shooting the driver of a vehicle in the head, which caused partial paralysis.

As part of a negotiated disposition, the prosecution amended the information to remove the firearm *discharge* allegation and its 25-years-to-life sentencing enhancement (§12022.53, subd. (d)) and instead alleged that defendant personally *used* a firearm (§ 12022.53, subd. (b)), which carries a 10-year enhancement.  Defendant pleaded no contest to attempted murder and admitted using a firearm during that offense.  He agreed to serve 19 years in prison, consisting of the upper term of nine years for attempted murder plus 10 years consecutive for the firearm use enhancement.  He also agreed to waive 365 days of presentence custody credit.  The trial court sentenced defendant in 2014 consistent with the parties' agreement, including dismissing the remaining charges and special allegations.

Representing himself, defendant petitioned for resentencing in 2019, contending that he was entitled to the ameliorative sentencing change in Senate Bill No. 620 (2017–2018 Reg. Sess.), which gave trial courts discretion to strike formerly mandatory firearm use enhancements.  After the trial court denied the petition because defendant's judgment became final in 2014 without a timely notice of appeal, defendant appealed and requested relief from default.  This court granted defendant's request, considered the appeal, and remanded the matter to allow him to renew his petition for resentencing under Senate Bill No. 620.

In August 2022, defendant pursued the requested resentencing in the trial court, this time represented by counsel.  His trial court filing in support of resentencing referenced Senate Bill No. 620 and the Legislature's "changes to Penal Code

2

Section[s] 1385, 1016.7, 1016.8, 1170(b), 1170.1 and other parts of the Penal Code to make it clear that in plea bargaining and sentencing the district attorney and the court are to seek out rehabilitative measures for almost any defendant." He further states that the filing was "written with the above changes in mind." Counsel asked "the court and the district attorney" to "agree to a lesser punishment" for defendant and suggested three ways of achieving that outcome: (1) reinstating the waived 365 days of presentence custody credit, (2) resentencing defendant to the lower term of five years or the middle term of seven years for attempted murder, and (3) striking the firearm use enhancement or imposing a lesser enhancement in its place. In a written opposition to defendant's request for resentencing, the prosecution stated it would not "renegotiate the sentence and agree to the above propositions." Following a hearing in September 2022, the trial court declined to exercise its discretion to strike the firearm use enhancement and ordered that the original sentence would remain.

## II.    DISCUSSION

Defendant argues the judgment must be reversed and the matter remanded for resentencing so he can receive the benefit of Senate Bill No. 567 (2021–2022 Reg. Sess.) and its amendments to section 1170. When defendant was originally sentenced in 2014, trial courts had broad discretion under former section 1170, subdivision (b) to select the appropriate term for offenses having a prescribed sentencing triad. Following Senate Bill No. 567, which took effect on January 1, 2022, trial courts are now generally required to select the middle or lower term (§ 1170, subd. (b)(1)) and may impose an upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) Further, where any of several enumerated circumstances "was a contributing factor in the commission of the offense," the sentencing court must impose

3

the lower term unless it finds "that the aggravating circumstances outweigh the mitigating circumstances [and] imposition of the lower term would be contrary to the interests of justice." (§1170, subd. (b)(6).) As relevant here, among the specified factors is that the defendant was under 26 years old at the time of the offense. (§1170, subd. (b)(6)(B); §1016.7, subd. (b).)

The parties correctly agree that the ameliorative sentencing change in Senate Bill No. 567 applies retroactively under the reasoning of *In re Estrada* (1965) 63 Cal.2d 740. But the Attorney General contends that defendant forfeited his right to raise the issue on appeal, because the bill was already in effect at the time defendant requested resentencing and defendant did not object on that basis to reimposition of the upper term at the hearing. Defendant does not dispute that the forfeiture rule would apply if he had failed to request resentencing under amended section 1170, subdivision (b), but argues that defense counsel's brief in support of resentencing did contain such a request.

We agree that forfeiture applies to the record here. (See *People v. Anderson* (2023) 88 Cal.App.5th 233, 242, rev. granted Apr. 19, 2023, S278786; *People v. Flowers* (2022) 81 Cal.App.5th 680, 683–684, rev. granted Oct. 12, 2022, S276237.) "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) And, as this court indicated in *People v. Todd* (2023) 88 Cal.App.5th 373, 381–382, rev. granted Apr. 26, 2023, S279154 (*Todd*), a defendant who received a stipulated sentence to an upper term before the enactment of Senate Bill No. 567 (and whose case is not yet final) should be free to choose whether to waive or invoke the requirements of amended section 1170, subdivision (b). It logically follows that a defendant who does not invoke those provisions in the trial court when given the opportunity to do so forfeits the right to raise the issue on appeal.

Although defendant asserts he did invoke Senate Bill No. 567 in his request for resentencing, we do not read his trial court pleadings as containing such a reference.

4

Senate Bill No. 567 is not specifically mentioned among the legislative changes he cited. The filing contains a section under the heading "The Importance of Penal Code Sections 1170(b) and 1170.1" which merely appears to quote section 1170 verbatim without any argument or analysis. The only other reference to section 1170 is its inclusion in a non-exhaustive list of Penal Code sections authorizing trial courts to dismiss or strike enhancements in the interest of justice. The document's concluding section asks the trial court and the district attorney to "agree to a lesser punishment" possibly including, among other proposed options, a sentence of five years or seven years for attempted murder "instead of the aggravated term" originally imposed. But that request cannot fairly be read as suggesting that defendant's original sentence did not meet the requirements of amended section 1170, subdivision (b) or that defendant was invoking any of those requirements.

Our reading of defendant's filing in the trial court is consistent with defense counsel's argument at the hearing. As defendant concedes on appeal, counsel did not expressly object to reimposition of the upper term as being unlawful under section 1170, subdivision (b) as amended. In fact, counsel asked the court to "be creative" and suggested "certain possibilities" for resentencing—one being a sentence to the middle term of seven years for attempted murder. When the court emphasized that counsel's call for "creativity" could nullify the negotiated disposition and result in a worse outcome for defendant, counsel acknowledged the decision in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), and suggested "a plea bargain with the People" to include an alternative weapons enhancement or other sentence reduction as a potential solution. The prosecutor then spoke in opposition to defendant's request for resentencing, and the court denied the request without further argument from defendant.

We acknowledge that defendant was 21 years old at the time of his 2008 offense, and that amendments to section 1170, subdivision (b) could be relevant to his sentence. But we conclude on this record that defendant forfeited his primary appellate contention

5

by not invoking those amendments in the trial court, and we therefore address his alternative argument that counsel's failure to object on those grounds constituted ineffective assistance.

To establish ineffectiveness of trial counsel in violation of the right to counsel under the Sixth Amendment to the United States Constitution, a defendant must show both deficient performance by counsel and prejudice from the deficiency. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216–217.) Deficient performance is rarely shown if there was a tactical reason for trial counsel's conduct. (See *People v. Bolin* (1998) 18 Cal.4th 297, 317 [affirming conviction where alleged failure to object may have been " 'an informed tactical choice within the range of reasonable competence' "]; *People v. Cruz* (1980) 26 Cal.3d 233, 255–256 ["except in rare cases, an appellate court should not attempt to second-guess trial counsel as to tactics"].)

The Attorney General argues that counsel could not have been ineffective in failing to invoke Senate Bill No. 567 because defendant's stipulation to an upper-term sentence divested the trial court of sentencing discretion and rendered the new law irrelevant in this case. We disagree for the reasons explained in *Todd*, *supra*, 88 Cal.App.5th at pp. 377–381. As the Legislature has declared in section 1016.8, subdivision (b)(1): "The California Supreme Court held in *Doe v. Harris* (2013) 57 Cal.4th 64 that, as a general rule, plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. That the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." Senate Bill No. 567 would therefore apply notwithstanding defendant's stipulation to an upper term, but defendant must still satisfy his burden of establishing counsel's deficient performance.

Defendant makes only the conclusory assertion that a "reasonably competent attorney would have objected to the upper term because an objection could only inure to

6

appellant's benefit." Yet defendant also devotes a significant portion of his appellate brief to seeking a remedy that would prohibit a sentence of more than 19 years on remand. Defendant's argument implicitly acknowledges the risk that challenging the reimposition of the upper term could result in a harsher sentence, as the California Supreme Court explained in *Stamps*, where the defendant pleaded guilty in exchange for a specified sentence and then invoked an ameliorative sentencing change on appeal. (*Stamps*, *supra*, 9 Cal.5th 685 at p. 692.) The Supreme Court held that although Stamps was entitled to seek the benefit of the new law, the trial court could not unilaterally modify the plea agreement and so would have to rescind its approval of the agreement in order for Stamps to pursue the relief he sought. (*Id.*, at pp. 707–708.) This court has since reached a similar conclusion concerning Senate Bill No. 567 in *Todd*, *supra*, 88 Cal.App.5th at pp. 381–382.

In advocating for resentencing, defense counsel was expressly cognizant of the *Stamps* decision and its possible significance—he discussed it in his brief to the trial court and at the hearing, where he told the court he was "thinking about the *Stamps* case in the back of [his] head." Although counsel did not specifically invoke the requirements of amended section 1170, subdivision (b), he was also aware of those requirements, as he noted at the hearing that an upper term would not be appropriate "under our current system" because there were "no aggravators agreed to." We recognize the possibility that counsel, though aware of Senate Bill No. 567, mistakenly believed it would not apply retroactively; but the record reveals another, likelier possibility: counsel reasonably believed in light of *Stamps*, and because there were "no aggravators agreed to" or found true by a factfinder as required under Senate Bill No. 567, that invoking the new law would risk nullification of the plea agreement and reinstatement of the original charges. Significantly, those charges included a firearm discharge allegation carrying a penalty of 25 years to life. (§12022.53, subd. (d).)

7

The arguments made in the trial court by defense counsel, both in writing and at the hearing, suggest that he was attempting to advocate for a lesser sentence while avoiding the possibility of a negative outcome for his client. Specifically, he attempted to gauge the willingness of the prosecution and the trial court to accept a reformulated plea agreement—an approach contemplated by the Supreme Court in *Stamps*, *supra*, 9 Cal.5th at p. 707. After the prosecutor firmly expressed unwillingness to renegotiate and the trial court indicated its apparent agreement with defense counsel's interpretation of *Stamps*, counsel did not at that point object to reimposition of the original sentence. This record thus supports the conclusion that counsel made an informed tactical choice not to object on Senate Bill No. 567 grounds. To the extent defendant means to suggest that he was not properly advised about Senate Bill No. 567, or that counsel's actions were not consistent with his wishes at the time, such claims are more appropriately raised in a habeas corpus proceeding. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

## III.    DISPOSITION

The judgment is affirmed.

8

_____

Grover, J.

**WE CONCUR:**


_____

Greenwood, P. J.


_____

Lie, J.


H050488
*People v. Mendiola*